FRANKLIN D. TONNE, Respondent, v. HORACE STATE BANK OF HORACE, NORTH DAKOTA, a Corporation, Appellant.

(193 N. W. 934.)

**Pleading — where party not misled by allegations nor unprepared to meet proof, variance not material.**

T., cashier of the A. bank, partially reimbursed it for losses sustained in carrying paper drawn by or on behalf of the H. bank and paying a draft representing the amount of credit balance in favor of the H. bank so obtained. T. took an assignment from the A. bank of items unpaid by the H. bank aggregating the amount of his payment to the A. bank. In an action by T. to recover the amount paid to the A. bank to reimburse it, it is *held:*

1. Where it is apparent on the record that the defendant was not misled by the allegations in the complaint nor unprepared to meet the proof offered it is not prejudiced by any variance there may be between the allegations and the proof.

**Banks and banking — no failure of proof in action by cashier for reimbursement.**

2. The plaintiff having pleaded, as the occasion for the loss sustained by the A. bank, the payment of a certain draft and his partial reimbursement of the A. bank on account of such payment and the taking of an assignment from the A. bank of its claim against the H. bank, and the evidence showing

that the draft so paid represented items for which the H. bank had taken credit by remittance through a correspondent and that T. had an assignment from the A. bank of these items aggregating the amount of his reimbursement, it is held that there is no failure of proof under § 7480, Comp. Laws, 1913.

**Bills and notes — one not entitled to presentment and notice of dishonor on worthless checks and drafts used in kiting process.**

3. Where worthless checks or drafts are used as instrumentalities in a "kiting" process with a view to swelling the apparent assets of a bank, the bank in whose interest they are thus used having no right to expect or require their payment, is not entitled to presentment and notice of dishonor under §§ 79 and 114 of the Negotiable Instruments Law, §§ 6964 and 6999, Comp. Laws, 1913.

**Bills and notes — payment of worthless checks and drafts by drawee bank in kiting process held not to discharge liability.**

4. If such instruments be paid by the drawee bank through remittance to a correspondent, the payment does not discharge the liability of the bank of origin.

Opinion filed May 8, 1923.

Banks and Banking, 7 C. J. § 569 p. 757 n. 53; Bills and Notes, 8 C. J. § 827 p. 592 n. 13; § 849 p. 612 n. 11 New; § 959 p. 684 n. 95 New; § 962 p. 686 n. 24 New; Pleading, 31 Cyc. p. 703 n. 38; p. 713 n. 47.

Appeal from the District Court of Cass County, *Cole,* J.
Affirmed.

*Wood & Nuchols,* and *Divet, Holt, Frame & Thorpe,* of Counsel, for appellant.

*W. S. Lauder,* for respondent.

BIRDZELL, J.   This is an appeal from a judgment in favor of the plaintiff and from an order denying a motion for a new trial in an action by the plaintiff as assignee to recover certain moneys alleged to be owing by the defendant.   The action was tried in the district court of Cass county before the Honorable A. T. Cole, judge, a jury trial having been waived.

The plaintiff at the time the controversy arose was cashier of the First National Bank of Abercrombie, holding stock in that bank and also in the defendant bank.   O. N. Hatlie was vice president of the First National Bank of Abercrombie and president of the defendant bank.

One A. C. Johnson was cashier of the latter bank. The defendant bank, hereinafter referred to as the Horace Bank, carried an account in the First National Bank of Abercrombie, hereinafter referred to as the Abercrombie Bank. In October, 1916, Hatlie contracted with one Dickson to sell to him his stock in the Abercrombie Bank. About October 23d, Dickson gave Hatlie a check for $1,000 drawn on the Horace Bank for the first payment on the stock. Hatlie deposited the check to his credit in the Abercrombie Bank and when it reached the Horace Bank in due course there were no funds there to pay it; but Johnson, the cashier of the latter bank, who was a brother-in-law of Dickson, nevertheless honored the check. To cover the overdraft, he immediately drew on Dickson at Abercrombie a sight draft for $1,007.73 and sent it to the First National Bank of Fargo, which in turn credited the amount to the Horace Bank and forwarded it to the Abercrombie Bank. It appears that this draft was held in the Abercrombie Bank a few days without payment or presentation to Dickson. Soon after its receipt by the Abercrombie Bank, Dickson and Johnson had occasion to stop in Abercrombie and while there told Tonne that $1,000 had been placed on deposit in the First National Bank of Fargo to meet the draft. This statement was later found to be false. Between November 1st and the end of the year 1916, Dickson drew checks on the First National Bank of Abercrombie payable to A. C. Johnson and sight drafts were drawn in varying amounts, which checks and drafts were used by the Horace Bank or by Johnson on its behalf in such a way as to reflect a credit on its books of the amount of these checks and drafts. Similar credits would be shown in its account upon the books of the First National Bank had the latter bank honored the items. In addition to the item of $1,007.73 mentioned above, there were items of $551.30, $252.50, $810, $515, $615, $650, $207 and $210.83, the last two apparently being the same item, the difference in amount being accounted for by protest fees. Some of these items were returned to the Horace Bank, some settled for by the latter bank, one settled by the surety on Johnson's fidelity bond, and others are in controversy here as will subsequently appear.

On January 6, 1917, Johnson drew a draft on the Abercrombie Bank for $3,377.55, which amount, according to the books of the Horace Bank, was the amount of its credit in the Abercrombie Bank. When

this draft came in regular course to the latter bank Tonne called Hatlie on the telephone to inquire what should be done, advising him that the Horace Bank did not have sufficient funds to meet the draft and that he would dishonor it; whereupon Hatlie told him in substance that the Horace Bank was good for it and that it should be paid to avoid embarrassment; thereupon the draft was paid. As a matter of fact the Horace Bank, under Johnson's management, was undergoing some embarrassment at the time and Dickson apparently was not able to make good on the paper bearing his name and which was responsible for the credit balance its books showed that it had with the Abercrombie Bank. After the honoring of this large draft in January, Tonne procured an accommodation note from one Helgeson, which was made to represent a loan and discount on its books and which stood as an asset in lieu of $2,014.63 of the worthless Dickson paper in the Abercrombie Bank. The items in excess of this were made good. Subsequently, in August, 1917, Tonne called a meeting of the board of directors of the Abercrombie Bank to consider certain criticisms made by the comptroller of the currency as a result of the examination of the Abercrombie Bank on June 4th. Pursuant to this notice, Hatlie, Tonne and Ingval Johnson, president of the Abercrombie Bank, met and considered the shortage due to the worthless paper which had been received from the Horace Bank. An agreement was reached whereby Hatlie would pay $1,000 and Tonne, $1,014.63. This would wipe out the Horace-Dickson paper except one item of $615, for which the Abercrombie Bank held Dickson's note. This note was later paid. Tonne drew his personal check for $1,014.63 and it was paid to the Abercrombie Bank. At the same time he drew up an assignment which was executed by Ingval Johnson as president of the Abercrombie Bank, which is, in part, as follows:

"That whereas party of the first part now holds in its own right and now has possession of said sight drafts issued and drawn by the Horace State Bank of Horace, North Dakota, through its cashier at that time and whose name was A. C. Johnson and known as such at that time on W. E. Dickson then a resident of Abercrombie, North Dakota, and whereas the First National Bank of Abercrombie, North Dakota, is about to sustain or has sustained a loss of the sight drafts amounting and aggregating to $1,014.63 being three in number, now whereas the

party of the second part, Franklin D. Tonne has paid the said sight drafts amounting to $1,014.63, now therefore for and in consideration of the payment of the said sight drafts (by?) the said party of the second part the party of the first part assigns all its right title and interest and hereby grants, bargains, sells, assigns, transfers and conveys to the party of the second part his heirs and assigns all their rights and choses in action of every name and description to the said before mentioned sight drafts . . ."

The contract between Hatlie and Dickson for the sale of the stock to the latter was rescinded, Hatlie retaining the $1,000 credited to him in the Abercrombie Bank upon a check which though honored had never been paid in fact to the crediting bank. Thus his payment of the $1,000 to the Abercrombie Bank merely restored the status quo. This action is brought to recover the amount paid by Tonne in the circumstances stated above.

The cause of action is alleged substantially as follows: That on January 6, 1917 the defendant bank drew its draft on the Abercrombie Bank for $3,377.55, which draft reached the Abercrombie Bank in due course and at a time when the Horace Bank had on deposit therein the sum of $28; that when the draft was presented, plaintiff notified the Horace Bank, through Hatlie, its president, that there were insufficient funds and that the draft would be returned, whereupon the defendant, through its president, agreed that if the Abercrombie Bank would pay the draft the defendant would reimburse it; that relying upon this promise the Abercrombie Bank paid the draft; that subsequently the Abercrombie Bank was reimbursed in the sum of $1,362.92. That after the partial reimbursement by the defendant, Hatlie paid to the Abercrombie Bank, on account of moneys advanced in the payment of said draft, the sum of $1,000 and at the same time the plaintiff paid out upon said draft the sum of $1,014.63 and took an assignment from the Abercrombie Bank of its claim against the defendant bank for the money paid out by it on account of said draft to the extent of the sum of $1,014.63.

On this appeal the appellant advances two main contentions: First, that there is a fatal variance between the allegations in the complaint and the proof offered in support of the cause of action therein alleged;

and second, that the evidence is insufficient to support the findings and judgment of the trial court.

It will be seen that the complaint predicates the liability of the defendant upon the payment by the Abercrombie Bank of the draft for $3,377.55 at a time when the Horace Bank had practically no funds on deposit in the drawee bank and upon the promise of the defendant bank to make the draft good. The assignment executed by Ingval Johnson, president of the Abercrombie Bank, purports to assign to the plaintiff the three items, making in all $1,014.63, and its rights and choses in action incident to these items.

From the allegations in the complaint it was apparent that a trial of the issues would involve the relations between the two banks. On the record it is also quite apparent that the defendant was neither misled by the allegations nor unprepared to meet the proof offered in their support. But it is contended that the allegations of the complaint are unproved in their entire scope and meaning so as to amount to a failure of proof under § 7480, Compiled Laws of 1913. We think this contention is not well founded. The evidence shows that the Abercrombie Bank did not, in fact, give the Horace Bank credit on its books for the various items heretofore mentioned as they were received from time to time and that, according to its books, the Horace Bank had but a few dollars on deposit when the draft for $3,377.55 was drawn and presented. It also shows that some of these items, in the aggregate more than $2,000, had been received by it from the Horace Bank and that they remained unpaid. Had the large draft not been paid at all, the Horace Bank would have received no credit for those items until they were paid. When, therefore, the Abercrombie Bank paid the draft it in effect credited the Horace Bank on the unpaid items to the extent that they already appeared as a credit on its books. In other words, the honoring of the $3,377.55 draft, pleaded in the complaint, was the occasion for the loss to the Abercrombie Bank, but the items that measure that loss are the items that were thus in effect credited. From the standpoint of the Horace Bank, these were the original considerations for the large draft, for it must be remembered that the latter purports to exhaust the balance carried at Abercrombie and obtained as above indicated. This legal result is not destroyed by the existence of the verbal contract alleged whereby the Horace Bank agreed to make the

large draft good. For in making this draft good it would also ipso facto make good the drafts which made up the credit balance on its own books. Hence, the proof of the allegation with respect to the draft for $3,377.55 likewise proves a cause of action on the unpaid items entering into the shortage of the Horace Bank. The evidence satisfactorily establishes the assignment to the plaintiff of these items and all causes of action incident thereto. We are of the opinion that the evidence as a whole proves a cause of action arising out of the payment of the large draft and that the assignment of the three small items to the plaintiff sufficiently evidences his right to pursue that cause of action.

The contention that the evidence is insufficient to support the judgment is based on testimony which establishes that the items going to make up the credit balances in favor of the defendant bank were held by the Abercrombie Bank an unreasonable length of time without dishonor or protest or were carried as cash and that no proceedings upon dishonor sufficient to charge parties secondarily liable were had. It is also shown that these items came to the Abercrombie Bank through another bank or banks with remittance letters showing that they had been credited to the Horace Bank on the books of the correspondent and that remittance was made in turn by the Abercrombie Bank to the correspondent as though the items were all good, thus, it is claimed, discharging the defendant from all liability thereon. The evidence shows that some of the items thus forwarded to the Abercrombie Bank were returned by the latter to the Horace Bank and that they were later forwarded again by the Horace Bank in the same way as before. The evidence as a whole further shows that "kiting" was going on between the two banks with a view to swelling the apparent assets of the Horace Bank. The names that were used for this purpose were those of A. J. Johnson, cashier, and his brother-in-law, Dickson, and it is apparent on this record that when drafts were drawn and used in favor of the drawer bank they were drawn in circumstances that would not justify an expectation on its part that they would be paid. Further, if they were paid, the evidence mades it clear that they were paid for the accommodation of the Horace Bank. In this situation the bank was not entitled to presentation for payment under § 79 of the Negotiable Instruments Law, § 6964, Compiled Laws of North Dakota for 1913, nor is it entitled to notice of dishonor under § 114, ¶ 4, § 6999, Comp. Laws,

1913. The evidence in the record is convincing that the Horace Bank never had any right to require the Abercrombie Bank to pay the items in question and neither was it in a position to expect that they would be paid. On the contrary, the burden of finding funds to meet these bills was at all times upon the Horace Bank. In these circumstances the Horace Bank stands in a situation, with respect to the Abercrombie Bank, analogous to that of the maker of a promissory note toward the person who has discounted it. It is clearly not in the position of an indorser of third party paper which it has discounted and credited and forwarded through correspondents. See Taylor v. Vossburg Mineral Springs Co. 128 La. 363, 54 So. 907; 8 C. J. 285, 532.

The judgment appealed from is affirmed.

Bronson, Ch. J., and Nuessle, Johnson, and Christianson, JJ., concur.